

**CHRISTOPHER M. MONGIELLO**
25 LEROY PLACE, PH #7
NEW ROCHELLE, NY 10805
TEL: 914 646-8224
therockacademy@mac.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x
                                              } APPEALS CASE NO. 7:24-cv-00694-CS
In Re:                                        } CH 13 BK. CASE NO. 23-22732
CHRISTOPHER M. MONGIELLO                      }
    Debtor,                 }    REPORTERS TRANSCRIPT
                                              }    EMERGENCY MOTION
                                              } **EVICTION DATE FEBRUARY 23, 2024**
————————————————————}

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

| | |
|---|---|
| IN RE: | Case No. 23-22732-cgm |
| | Chapter 13 |
| CHRISTOPHER MONGIELLO, | |
| Debtor. | |
| . . . . . . . . . . . . . . . . | |
| | Adv. No. 23-07032-cgm |
| CHRISTOPHER MONGIELLO, | |
| Plaintiff, | |
| v. | |
| HSBC BANK USA NA, as Trustee for the LMT 2006-6 Trust Fund, | |
| Defendant. | |
| . . . . . . . . . . . . . . . . | |
| | Adv. No. 23-07033-cgm |
| CHRISTOPHER MONGIELLO, | |
| Plaintiff, | |
| v. | |
| | 300 Quarropas Street |
| INDYMAC BANK, F.S.B., et al., | White Plains, NY 10601 |
| Defendants. | Wednesday, January 17, 2024 |
| . . . . . . . . . . . . . . . . | 11:05 a.m. |

TRANSCRIPT OF (CONTINUED)
BEFORE THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator:          Courtroom ECRO Personnel

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1

TRANSCRIPT OF (CONTINUED):


PRETRIAL CONFERENCE;
PRETRIAL CONFERENCE;
RESPONSE RE: MOTION TO VACATE AUTOMATIC STAY
(RELATED DOCUMENT(S) 14) [30];
OBJECTION TO CONFIRMATION OF AMENDED PLAN WITH CERTIFICATE OF
SERVICE (RELATED DOCUMENT(S) 20) [27];
RESPONSE/REPLY TO THE ANSWER OF CHRISTOPHER MONGIELLO TO
MOTION OF TIFFANY BROOK EASTMAN SEEKING TO VACATE THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. SECTION 362(d)(1)
(RELATED DOCUMENT(S) 30, 14) [34];
MOTION FOR RELIEF FROM STAY/MOTION OF TIFFANY BROOK EASTMAN
SEEKING TO VACATE THE AUTOMATIC STAY PURSUANT TO
11 U.S.C. SECTION 362(d)(1) [14];
CONFIRMATION HEARING;
MOTION TO DISMISS CASE APPLICATION AND CERTIFICATE
OF SERVICE [28]


APPEARANCES (Continued):

For the Debtor:                 Cushner Associates, P.C.
                                By:  TODD S. CUSHNER, ESQ.
                                399 Knollwood Road, Suite 205
                                White Plains, NY 10603
                                (914) 600-5502

For the Chapter 13          Law Office of Rick S. Cowle, PC
Trustee:                    By:  REBECCA RICHARDS, ESQ.
                            18 Fair Street
                            Carmel, NY 10512
                            (845) 225-3026


For Tiffany Brook          Reich Reich Reich, P.C.
Eastman:                   By:  JEFFREY REICH, P.C.
                           235 Main Street, Suite 450
                           White Plains, NY 10601
                           (914) 949-2126

For PHH Mortgage:       LORI J. GILMORE-MORRIS, ESQ.
6 Daisy Lane
Wappingers Falls, NY 12590
(845) 298-7075

For HSBC Bank USA,     Stradley Ronon Stevens
National Association,  Young, LLP
as Trustee:          By:  DANIEL M. PEREIRA, ESQ.
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8747

1     (Proceedings commence at 11:05 a.m.)

2       THE COURT:  23-07032, Mongiello v. HSBC Bank in the

3 matter of 23-22732, Christopher Mongiello.  And I believe

4 there's another one, 23-07022 [sic], Mongiello v. IndyMac Bank.

5 And that one's on a pretrial.  And then let's -- also,

6 23-22732, Christopher Mongiello, motion to vacate automatic

7 stay.  And that's what we have here.

8       State your name and affiliation.

9       MR. CUSHNER:  Todd Cushner for Chris Mongiello, the

10 debtor.

11      MS. RICHARDS:  Rebecca Richards, Chapter 13 trustee's

12 office.

13      MR. REICH:  Jeffrey Reich for Tiffany Brook Eastman,

14 Your Honor.

1           MS. GILMORE-MORRIS:  Lori J. Gilmore-Morris
2  (indiscernible) Raquel Felix, on behalf of PHH Mortgage with
3  regard to the objection to confirmation.
4           MR. PEREIRA:  Good morning, Your Honor.  Daniel
5  Pereira on behalf of HSBC.  I'm really just here for the
6  pretrial, but if I could just quickly address something with
7  Your Honor?
8           THE COURT:  Yeah, because no answer's been filed, as
9  far as I can tell, from HSBC.  Did y'all file an answer?
10          MR. PEREIRA:  I believe we did, Your Honor.  I
11  haven't (indiscernible) docket (indiscernible).
12          THE COURT:  Well, answer this -- when did you file
13  it?
14          MR. PEREIRA:  It looks like it was filed
15  December 19th.
16          THE COURT:  Oh, because I have -- mine says no answer
17  as of 12/18.  As you know, we work these things up quickly.
18  Okay.
19          MR. PEREIRA:  Your Honor, if I could just address
20  something very quickly?
21          THE COURT:  Sure.
22          MR. PEREIRA:  We had a -- to be perfectly candid, a
23  situation in our office where we had some folks leave and are a
24  little short-handed.  I was asked to cover this at the very
25  last minute, got the papers yesterday evening, and only

1  realized when I logged in that this was SDNY.  I'd been told it
2  was EDNY.

3          And candidly, Your Honor, I'm admitted in EDNY but
4  not SDNY.  I am admitted in the Bankruptcy Courts of New
5  Jersey, all three districts of Pennsylvania, the District of
6  Delaware.  So I would just ask if, with Your Honor's
7  permission, to appear specially for this limited --

8          THE COURT:  You'll appear specially for today.
9  Otherwise, you have to file a pro hac vice.

10          MR. PEREIRA:  Understood, Your Honor.  I apologize
11  for the --

12          THE COURT:  But for today, I will of course let you
13  (break in audio).

14          MR. PEREIRA:  Thank you.

15          THE COURT:  Okay.  And then so we have a pretrial
16  conference on both of these.  Okay?  Right?

17          MR. REICH:  Yes, Your Honor.  Would you like --
18  Jeffrey Reich for Tiffany Brook Eastman.  How would -- which
19  matter would you like to proceed with first?

20          THE COURT:  I'm honestly not sure.

21          MR. REICH:  Okay.

22          THE COURT:  Because I also have a relief from stay
23  from your client.

24          MR. REICH:  Correct.

25          THE COURT:  Which would put this in another court.

1   So why don't you just talk to me about that a bit.

2                MR. REICH:  Okay.  Judge, first of all --

3                THE COURT:  Wait.  There's another thing.  Hold on.

4                MR. REICH:  Sorry.  Go ahead.

5                THE COURT:  I also have a motion to dismiss.

6                MR. REICH:  Correct, filed by the Chapter 13 trustee.

7   That's correct.

8                THE COURT:  Ms. Richards, do you want to address the

9   motion to dismiss?

10               MS. RICHARDS:  The motion to dismiss, Your Honor, we

11  did receive some of the documents that were requested.  The

12  debtor is only one payment in arrears.  The bigger issue is

13  that there's an open 341 hearing.  We needed amended schedules,

14  an amended plan, and amended budget.  It's been a quite

15  contentious 341 process.  So that hearing is on for

16  February 15th, and we just need those amendments prior to that

17  date so the testimony can continue at that point.

18               MR. REICH:  Judge?

19               THE COURT:  Yes.

20               MR. REICH:  Jeffrey Reich.  I appeared on behalf of

21  Tiffany Brook Eastman in both of those 341(a) meetings, ordered

22  a transcript from the first one.  The first one took place

23  approximately -- almost two months ago now.  And at the time of

24  that first hearing, there was testimony regarding some

25  significant inaccuracies in the petition and in the schedules.

1        Ms. Richards just addressed a few of them, which is
2   Schedules I and J, which does not contain expenses.  First of
3   all, it doesn't contain any provision for taxes, neither
4   federal or state taxes paid by the debtor.  And the debtor
5   acknowledges that he does pay taxes.  He acknowledged by
6   testimony.  And, two, that the debtor acknowledged that he
7   paid -- and testified that he paid $1,900 a month for his
8   parents' HELOC loan, which is not included in his expenses
9   there either.
10        And when you include those two expenses, I believe
11  the debtor is not even solvent on that.  And the problem is we
12  haven't been able to conduct a -- the trustee really hasn't
13  been able to conduct her 341(a) meeting because it happened
14  again just last week at the last 341(a) meeting, and no
15  amendments were filed.
16        So it's now put over to February 15th for some very
17  crucial information for this Court and the creditors, but the
18  Court has -- the filing doesn't contain any accurate
19  information, based on the debtor's own testimony.
20        MR. CUSHNER:  Your Honor, with respect to the taxes,
21  we're amending -- he's just getting the figure of what he paid
22  last year, to calculate -- because he's making pretty much the
23  same amount of money.  And as far as his -- money to his
24  parents --
25        THE COURT:  Wait, wait, wait, wait.  I have that he

1    hasn't filed the tax returns for '19, '20, '21, and '22.   Has

2    he not given -- not filed, has not given those to the trustee.

3              MS. RICHARDS:   What I have seen, Your Honor, is that

4    we requested the business tax returns (indiscernible) personal

5    returns.   I went through them again last night.   I think the

6    issue is there's a Schedule C and he's filing (indiscernible)

7    tax returns, and (indiscernible) business income with -- as a

8    profit and loss within his personal tax returns.

9              I don't want to testify necessarily directly to that.

10   Mr. Cushner can probably state more clearly on that.   But I

11   don't think the debtor is filing separate business tax returns,

12   which has further confused (indiscernible).   I tried to get at

13   that at the 341 hearing, and again I was told that the

14   business's were filed separately, but I'm not entirely sure

15   that that is the case here.

16             THE COURT:   But you --

17             MR. CUSHNER:   The trustee's correct --

18             THE COURT:   But you haven't received those tax

19   returns for the business, correct?

20             MS. RICHARDS:   I don't know if they exist,

21   Your Honor, to be quite candid.   I think they were included in

22   the personal returns under a Schedule C.

23             THE COURT:   But they said they had filed them.   So,

24   if they said they filed them, where are they?

25             MS. RICHARDS:   That's the question that's

1 outstanding.

2         MR. CUSHNER:  Okay.

3         THE COURT:  Mr. Cushner, (break in audio) question?

4         MR. CUSHNER:  Yeah, the debtor was a little confused.

5 He put in a Schedule C on his personal tax return, and his

6 accountant is working on his business tax returns, which I'm

7 supposed to have in about a week.

8         THE COURT:  Okay.  Okay, okay, okay.  Let me just

9 have the whole picture then.  Let's look at those for a moment.

10 You've got two lawsuits, Mr. Cushner.

11         MR. CUSHNER:  That's correct, two adversary cases,

12 one against IndyMac, one against HSBC.  HSBC did respond.

13         THE COURT:  Yes, I see -- I heard that now, so I'm --

14         MR. CUSHNER:  Okay.

15         THE COURT:  I'll tell you what.  I'm going to kick

16 the can down the road on purposes here.  Y'all have got another

17 341.  There is information -- you say that the accountant is

18 going to get the information in a week.  I heard that, one

19 week.  So, by the time the 341 is being held on the 15th,

20 everybody should have more information, and I should be clear

21 about what I'm going to do.

22         I have a motion to dismiss sitting there.  But if we

23 don't have clarification on his tax returns, Mr. Cushner, I

24 would think that this may not be in federal court.

25         MR. CUSHNER:  I understand, Your Honor, and I'll make

1  sure that we get those business tax returns.

2          THE COURT:  Well, and if they're not tended at the

3  341, the same thing may happen.

4          MR. CUSHNER:  Understood.

5          MR. REICH:  Judge, may I go forward with my motion or

6  are you going to adjourn my motion?

7          THE COURT:  I'm going to adjourn your motion too.

8  You've got -- your motion -- excuse me.  I just looked at your

9  motion.  What was it?  The lift --

10         MR. REICH:  My motion --

11         THE COURT:  Yes.

12         MR. REICH:  May I just lay a foundation or a record

13  here for a second?

14         THE COURT:  Of course.

15         MR. REICH:  So my motion -- my client's motion,

16  Tiffany Brook Eastman, we're dealing with really after two -- I

17  would say ten years of litigation in the state court, which was

18  a divorce case.  In that divorce case, she was promised and

19  actually he was -- Mr. Mongiello was ordered to remove her name

20  from the mortgage and the notes on their marital residence,

21  which Mr. Mongiello still lives in.

22         That was going on for approximately -- has been going

23  on for approximately ten years.  During those ten-year period,

24  in good faith, Ms. Brook Eastman did transfer the apartment to

25  her former spouse, relying on his promises and frankly the

1  order to remove her from the mortgage and note.

2           Subsequent to that, and during that time,

3  Mr. Mongiello did not remove her from the mortgage and note,

4  and defaulted on the mortgages.  And it has ruined her credit,

5  significantly impacted her, over several -- more than several

6  years.  Following COVID, which she was interrupted by -- in

7  pursuing what she was due under the initial order to remove her

8  from the note and mortgage, she commenced an action to force

9  Mr. Mongiello, to hold him in contempt, frankly, for failing to

10  take the action and remove him.

11           That led -- that motion was resolved by -- in a

12  lengthy decision of the Honorable Melissa Loehr, which is

13  annexed to my motion as Exhibit A, finding Mr. Mongiello in

14  contempt and directing that Tiffany Brook Eastman be appointed

15  as the receiver of the property, with limited powers of

16  attorney to sell the property.  That was then codified in an

17  order following entry of that decision and order on

18  August 23rd, 2022.  That's annexed to Exhibit B to my motion.

19           Ms. Brook Eastman was carrying out her duties as

20  receiver, as appointed receiver under the state court's order,

21  hired a broker, and was not allowed access to the property, and

22  Mr. Mongiello was taking action to prevent her from carrying

23  out her duties as receiver, which prompted another contempt

24  motion.

25           And annexed to my motion is an order of the Honorable

1   Thomas Quinones, Justice of the Supreme Court, admonishing the

2   defendant to abide by the Court's orders and directives,

3   including providing the plaintiff with a copy of all keys,

4   access codes, security codes, et cetera, to the subject

5   property, so she could carry out her duties.

6          Again, there was a big problem.  Mr. Mongiello

7   wouldn't let her carry out her duties.  So yet another motion

8   was filed.  On April 17th, 2023, as annexed to the motion as

9   Exhibit D, there was a hearing before the Honorable James Hyer,

10  Justice of the Supreme Court; and in that record, which is

11  before Your Honor, is an agreement by and between the parties

12  which my client thought resolved the issue once again, and

13  provided Mr. Mongiello six months to get her removed from the

14  note and mortgage.

15         There was a standstill agreement that was terminated

16  by its terms and by agreement of Mr. Mongiello on the 180th

17  day.  Mr. Mongiello still did nothing.  On the 180 -- 179th

18  day, or 180th day, Mr. Mongiello filed the bankruptcy case.

19         He is in direct violation of multiple court orders --

20  contempt orders, Judge.  He is in violation now of a settlement

21  agreement that everybody tried to help out with, including

22  Judge Hyer, to give him another six months to do it.  And now

23  he's before your court asking the Court, I believe, to undo all

24  kinds of court orders that are already there as a matter of

25  this law and this Court does not have jurisdiction to look

1   behind.

2        I would ask Your Honor to function on the motion now.

3   This has gone on long enough, Judge.  It should go back to the

4   state court, at least the issues with respect to my client's

5   receivership.  There has been no motion before this Court to

6   remove my client as a receiver, nor was she even disclosed as

7   the receiver in the petition.

8        There are many, many, many what I would deem as

9   advertent nondisclosures in the bankruptcy petition causing the

10   trustee's -- and this is Mr. Frost's word -- that this is

11   disturbing.  I have the transcript from his -- from the first

12   341(a) meeting.  And still we are now two months later and none

13   of these inaccuracies, gross inaccuracies, Your Honor, have

14   been fixed.

15        In fact, just yesterday there was an amended Schedule

16   A and B disclosing the LLC, namely Christopher Mongiello's LLC,

17   which was not disclosed in the initial petition, and it took my

18   questioning of him to admit that he had it.  And it took him

19   two months to amend Schedules A and B.  I would ask Your Honor

20   to function on my motion and grant the motion to vacate the

21   stay.

22        THE COURT:  Very good.

23        MR. CUSHNER:  May I, Judge?

24        THE COURT:  Yes, you may.  Yes, you may.  You may be

25   heard.

1    MR. CUSHNER:  Thank you, Judge.  I think what

2 Mr. Reich failed to point out is that in 2013 Mr. Mongiello

3 signed a loan modification which removed his wife from the note

4 and mortgage.  There's a note, there's a mortgage, that only

5 has Mr. Mongiello's name on it.  It doesn't have his client's

6 name on it.

7    I'm not 100 percent familiar with what happened in

8 state court, but I am making a motion to have him removed as

9 receiver, and I believe the two adversary cases may resolve

10 Mr. Reich's issues.

11    Now, as far as the fact that his LLC wasn't

12 disclosed, I didn't know about the LLC until we had the second

13 341(a) that was -- it wasn't two months.  It was (break in

14 audio) amendments to the plan -- to the petition were made --

15 almost within three days.

16    MR. REICH:  Judge, may I respond?

17    THE COURT:  You don't need to.  Section 362(d)

18 provides that on request of a party in interest, and after

19 notice and a hearing, the Court shall grant relief from the

20 stay by terminating such stay for cause.

21    Mr. Cushner didn't address your major arguments.  In

22 determining whether cause exists to lift the automatic stay

23 under 362(d) to permit litigation to proceed in another forum,

24 courts in the Second Circuit look to the 12 factors, the Sonnax

25 Industries factors.  That's the Second Circuit 1990.

1      And the factors are: whether relief would result in
2  a partial or complete resolution of the issues that are brought
3  up; lack of any connection with or interference with a
4  bankruptcy case; whether the other proceeding involves the
5  debtor as a fiduciary; whether a special tribunal is necessary
6  for the expertise; whether the debtor's insurer has assumed
7  full responsibility for defending it; whether the action
8  primarily involved third parties.  On and on and on, I can go
9  on.
10      The Court need only apply the factors that are
11  relevant to the particular case, and does not need to give each
12  factor equal weight.  That's Burger Brothers [sic], Inc. v.
13  South Street Seaport Limited Partnership, 183 B.R. 687.
14      Regarding the first factor, debtor and creditors have
15  engaged in litigation of the conduct in 2021 in state court.
16  If the court -- if the stay were modified to allow the state
17  court to continue, the matter would resolve.  The debtor's
18  argument that the loan modification did happen in 2014 is an
19  issue for state court to determine.
20      Regarding the second factor, whether the result from
21  the state court would not affect the bankruptcy proceeding:  If
22  the state court ruled in favor of the creditor, the mortgage
23  and other liens will be paid to the appropriate creditors or
24  any other proceeding will be held in escrow by the counsel to
25  the creditor and shall await further direction from the Court.

1      Regarding the seventh factor, creditor is moving

2  forward with her state court case and selling the property as

3  receiver and attorney-in-fact will not prejudice (break in

4  audio).   The major goal of creditor seeking relief to move

5  forward in state court is specifically so the debtor's mortgage

6  creditor can be paid and she can be released from the mortgage.

7      Regarding Factor 10, judicial economy will be served

8  by granting relief from the stay.   The debtor has ten years to

9  remove -- has had ten years to remove creditor from the

10  mortgage in seeking refinancing or payoff options.   Debtor and

11  creditor have been litigating the issue for several years.

12  Debtor has been given opportunity after opportunity to abide by

13  the terms of numerous stipulations.   Those stipulations have

14  been modified repeatedly to give debtor longer and longer to

15  fulfill his end of the bargain.   The issues here are all state

16  court issues and not appropriate for this Court.   As to the

17  debtor's affirmative defense, that is best argued before state

18  court.

19      Regarding Factor 12, the balance of interest weighs

20  heavily in favor of the creditor.   Fourteen years following the

21  divorce, the creditor has been subjected to inaccurate credit

22  ratings and premiums due to the debtor's refusing to abide by

23  the terms of the original divorce stipulation and every single

24  stipulation that followed.   Significant harm is being done to

25  the creditor while the debtor uses the tactic after tactic to

1   delay the sale of the condominium.

2           I grant your motion, Mr. Reich.

3           MR. REICH:  Thank you very much, Judge.

4           MR. CUSHNER:  Thank you, Your Honor.

5           THE COURT:  So there we go.  Now, then, as to

6   everything else, we're kicking the can down the road.  I'll see

7   y'all again on 3/13.

8           And, Mr. Cushner, I better have cooperation from the

9   debtor at a 341 or there will be more consequences, such as the

10  motion to dismiss that's being continued also.

11          MR. CUSHNER:  Understood, Your Honor.

12          THE COURT:  Thank you.

13          MR. CUSHNER:  I'm sorry, Your Honor.  Just to

14  clarify, that would also apply to the pretrial?

15          THE COURT:  Yeah, let's just --

16          MR. CUSHNER:  Okay, Your Honor.

17          THE COURT:  There's a part of me that says some of

18  your discovery needs to be at that 341.

19          Ms. Richards, you might want to make sure there's

20  some time on that 341.

21          MS. RICHARDS:  Absolutely, Your Honor.

22          THE COURT:  And that way, maybe we can save a lot of

23  money and headache.  How does that sound?

24          MR. CUSHNER:  Sounds good, Your Honor.  Thank you.

25          MR. REICH:  Thanks, Judge.

```
1              THE COURT:  Thank you.  And thank you, Mr. Reich.
2    Well argued.
3         (Proceedings concluded at 11:25 a.m.)
4                        *  *  *  *  *
5
6
7
8                    C E R T I F I C A T I O N
9
10             We, Michelle Costantino and Alicia Jarrett,
11   court-approved transcribers, hereby certify that the foregoing
12   is a correct transcript from the electronic sound recording
13   provided for transcription and prepared to the best of my
14   ability.
15
16   Michelle Costantino
17   _____        DATE:   January 31, 2024
18   MICHELLE COSTANTINO, AAERT NO. 589
19   ACCESS TRANSCRIPTS, LLC
20
21   Alicia J. Jarrett
22
23   _____
24   ALICIA JARRETT, AAERT NO. 428    DATE:   January 31, 2024
25   ACCESS TRANSCRIPTS, LLC
```