UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re

CHRISTOPHER MONGIELLO,

                              Debtor.
------------------------------------------------------------------x

CHRISTOPHER MONGIELLO,

                              Appellant,

        – against –

TIFFANY BROOK EASTMAN,

                              Appellee.
------------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-694 (CS)

Appearances:

Christopher M. Mongiello
Pelham Manor, New York
*Pro Se Appellant*

Seibel, J.

      Before the Court is the appeal of Debtor-Appellant Christopher Mongiello ("Debtor") from a January 19, 2024 Order, (Bankr. Dkt. No. 43 (the "January 19 Order")),[1] entered by Judge Cecelia G. Morris of the United States Bankruptcy Court for the Southern District of New York, in the Chapter 13 bankruptcy proceeding captioned *In re Mongiello*, 23-BK-22732 (Bankr. S.D.N.Y.).  The January 19 Order, issued on the motion of Appellee Tiffany Brook Eastman

---

[1] Citations to "Bankr. Dkt." refer to entries on the Bankruptcy Court's docket, No. 23-BK-22732, and all page numbers cited herein for entries on that docket refer to the page numbers generated by the Bankruptcy Court's Electronic Case Filing System.  Citations to "ECF No." refer to entries on the District Court's docket for this case, 24-CV-694.

("Eastman"), vacated the automatic stay imposed by 11 U.S.C. § 362(a) as to Eastman's interest in the Debtor's property at 25 Leroy Place, Penthouse #7, New Rochelle, New York 10805 (the "Property"), to allow her to enforce her rights in the Property, including her right to sell the Property as receiver, as previously authorized by a New York State court.

For the following reasons, the Bankruptcy Court's Order is affirmed.

I.   **BACKGROUND**

Debtor and Eastman were married from 2005 to 2010 and owned the Property together. (Bankr. Dkt. No. 14-2 ¶¶ 1-2.) On July 22, 2010, as part of their divorce proceedings, they entered into a stipulation of settlement (the "Stipulation"), under which Debtor would have sole use and occupancy of the Property and would "procure a modification of the existing loan[s] [on the Property] into his name and/or . . . refinance the existing loan[s]," at which time the parties would convey title of the Property into Debtor's sole name. (*Id.*) The Stipulation provided that if Debtor failed to timely modify the loans on the Property, the Property would be sold and the net profit or loss would be split equally. (*Id.* ¶ 2.)

On May 18, 2012, Debtor and Eastman entered into a modified stipulation (the "Modified Stipulation"), which allowed Debtor until May 31, 2013 to obtain a modification or refinance the loans on the Property to place them solely in his name. (*Id.* ¶ 3.) Eastman then executed a quitclaim deed conveying her title in the Property to Debtor. (*Id.* ¶ 4.) At some point in 2013, Eastman became aware that Debtor had stopped paying the mortgages on the Property, and, in March 2014, she discovered that her credit score had dropped from a default on the mortgage payments. (*Id.* ¶¶ 5-6.) In or around June 2015, Debtor advised Eastman that he had taken the necessary steps to remove her name from the mortgages. (*Id.* ¶ 7.) But in 2020, according to

Eastman, she discovered that Debtor had not, in fact, removed her name from the mortgages and that Debtor had not made any mortgage payments since 2019.  (*Id.* ¶ 8.)

On December 10, 2021, Eastman filed an Order to Show Cause in the New York Supreme Court for the County of Westchester (the "State Court"), seeking to hold Debtor in contempt for his failure to adhere to the terms of the Modified Stipulation.  (*Id.* ¶ 10.)  At a conference in the State Court, Debtor agreed to sell the Property, but Eastman says he later repudiated the agreement.  (*Id.*)  On April 12, 2022, Eastman filed a second Order to Show Cause in the State Court, seeking an order directing the sale of the Property and appointing Eastman as the receiver and attorney-in-fact for Debtor with respect to the Property to carry out the sale.  (*Id.* ¶ 11.)  On July 1, 2022, the State Court issued a Decision and Order granting Eastman's request to be appointed temporary receiver with a limited power of attorney to sell the Property.  (*Id.* ¶ 12; *see* Bankr. Dkt. No. 14-3.)  Notwithstanding, according to Eastman, Debtor failed to cooperate with a sale of the Property.  (Bankr. Dkt. No. 14-2 ¶ 13.)

On September 1, 2022, Eastman filed a third motion seeking a court order directing Debtor to grant Eastman access to the Property.  (*Id.* ¶ 13.)  On October 12, 2022, the State Court issued an order directing Debtor to provide Eastman with all keys necessary to access the Property.  (*Id.* ¶ 14; *see* Bankr. Dkt. No. 14-5.)  Again, Eastman says, Debtor failed to comply. (Bankr. Dkt. No. 14-2 ¶ 15.)  On April 7, 2023, the parties reached an agreement (the "Settlement"), approved by the State Court, which provided that Eastman's receivership would be suspended for 180 days to allow Debtor to refinance or pay off the mortgages and that, in the event Debtor failed to comply, the receivership would be automatically reinstated and Debtor would be required to vacate the Property.  (*Id.*; *see* Bankr. Dkt. No. 14-6.)

On October 5, 2023, one day after the 180-day period expired, Debtor filed a voluntary Chapter 13 bankruptcy petition, automatically staying the State Court proceedings and Eastman's ability to proceed as receiver of the Property. (Bankr. Dkt. No. 1; *see* Bankr. Dkt. No. 14-2 ¶ 17.) On November 14, 2023, Eastman filed a motion in the Bankruptcy Court pursuant to 11 U.S.C. § 362(d)(1) seeking relief from the automatic stay to allow her to commence her receivership and sell the Property. (Bankr. Dkt. No. 14.) Debtor opposed the motion in the form of an answer on December 22, 2023, (Bankr. Dkt. No. 30), and Eastman replied on January 10, 2024, (Bankr. Dkt. No. 34).

On January 17, 2024, the Bankruptcy Court held a hearing on Eastman's motion. (*See* ECF No. 7; Bankr. Dkt. Minute Entry dated Jan. 17, 2024.) At the hearing, counsel for Eastman represented that Debtor and Eastman had been in litigation over the Property for ten years and that Debtor remained in violation of the State Court orders and the Settlement. (ECF No. 7 at 12:15-15:1.) Counsel for Debtor disputed Eastman's assertion that Debtor had not removed her name from the mortgages, contending that, in 2013, Debtor signed a loan modification that removed Eastman from a mortgage and a note. (*Id.* at 16:1-6.)[2] Judge Morris determined that

---

[2] The Court presumes that Debtor's counsel was referring to the Loan Modification Agreement (the "Agreement") dated December 23, 2013 and signed by Debtor on February 27, 2014. (Bankr. Dkt. No. 30-1.) The Agreement does not, on its face, remove Eastman from either the mortgage or the note. And the record contains ample support for the contrary. (*See* Bankr. Dkt. Nos. 34-1 (document dated January 26, 2022 from first mortgagee stating, "The modification was completed with Christopher Mongiello's signature only . . . . However, Tiffany Eastman is still liable for the debt as per the Note and Mortgage."); 34-2 (mortgagee's January 24, 2023 payoff quote addressed to "Mortgagor(s) Christopher Mongiello [and] Tiffany Eastman"); 14-3 ("[Debtor] has provided no credible proof that [Eastman's] name has been removed from the first mortgage, and he does not even address the second mortgage that bears [Eastman's] name.")). Indeed, Debtor arguably concedes that he did not remove Eastman's name from the mortgages in his brief in support of the instant appeal. (*See* ECF No. 19 ("Debtor's Br.") at 26.) In any event, Debtor provided no evidence to either the Bankruptcy Court or this Court that he complied with the requirement of the Settlement that he refinance or pay off the mortgages in the 180 days after April 7, 2023.

4

cause existed to lift the automatic stay under § 362(d)(1) because (1) judicial economy would be served by allowing the State Court to resolve the issues that Debtor and Eastman had been litigating for several years, and (2) Eastman had been and would continue to be harmed by Debtor's refusal to abide by the terms of the Stipulation and subsequent modifications.  (*Id.* at 17:10-19:1.)  On January 19, 2024, the Bankruptcy Court entered a written order granting Eastman's motion and vacating the automatic stay to allow Eastman to proceed in State Court.  (*See* January 19 Order.)

## II.     STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017) (summary order).[3]

"A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error."  *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021).  "[A]djudication of automatic stay relief is reviewed for abuse of discretion."  *In re Regan*, No. 21-CV-1231, 2022 WL 16744175, at *7 (N.D.N.Y. Nov. 7, 2022).  "This means that the Court does not consider whether it would have made the same decision, but merely whether the Bankruptcy Court's decision was reasonable."  *Schneorson v. Schneorson*, No. 22-CV-2434, 2023 WL 4490392, at

---

[3] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.  The Court will provide Debtor with copies of unreported cases cited in this Opinion.

\*4 (E.D.N.Y. July 12, 2023).  "A bankruptcy court exceeds its allowable discretion where its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Miles v. Chase Bank*, No. 20-CV-4748, 2022 WL 842073, at \*1 (E.D.N.Y. Jan. 24, 2022).  "In reviewing the bankruptcy court's determinations, this Court may rely upon any ground supported by the record – it need not rely solely upon those relied upon by the Bankruptcy Court." *Amelio v. Piazza*, No. 19-CV-5944, 2020 WL 5535241, at \*3 (S.D.N.Y. Sept. 15, 2020).

The Debtor-Appellant appeals *pro se*.  Accordingly, the Court is required to construe his pleadings "liberally to raise the strongest arguments that they suggest."  *Id.*

### III. DISCUSSION

Debtor argues on appeal that the Bankruptcy Court erred in lifting the automatic stay, but most of his arguments relate to events that occurred after that ruling – which obviously could not have been before the Bankruptcy Court at the time – or to matters relating to the underlying litigation in the State Court, which the Bankruptcy Court was not reviewing.  (*See* Debtor's Br. at 8-11, 13, 20-22.)  He asserts more generally that efficiency and fairness would have been furthered by denying the motion.  (*See id.* at 11, 22-27.)  Although Eastman did not file a responsive brief, "the appropriate remedy is not the automatic granting of the appellant's appeal, but a review of the merits of the appeal," *Matarese v. Robinson*, No. 17-CV-406, 2018 WL 1406630, at \*2 (N.D.N.Y. Mar. 20, 2018); *see Neilson v. Est. of Benedict*, No. 18-CV-1101, 2020 WL 1140493, at \*3 (N.D.N.Y. Mar. 9, 2020), to which I now turn.

The automatic stay and the provisions that allow for relief from the automatic stay are codified in § 362 of the Bankruptcy Code.  *See* 11 U.S.C. § 362.  "Pursuant to 11 U.S.C.

6

§ 362(a), the filing of a bankruptcy petition operates as an automatic stay to give a debtor a short respite from creditors' demands, during which a debtor will have the opportunity to develop and implement plans to right his financial affairs." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002). Sections 362(d)(1) and (d)(2) provide two avenues for relief from an automatic stay. *See Schneorson*, 2023 WL 4490392, at *3. Here, the Bankruptcy Court vacated the automatic stay pursuant to section 362(d)(1), which reads:

>   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1); *see* January 19 Order. The Court first considers whether Eastman is a party in interest, and then determines whether the Bankruptcy Court abused its discretion in lifting the automatic stay under section 362(d)(1).

### A.  Party in Interest

Debtor does not appear to contest Eastman's standing to request relief from the automatic stay, and the Court is satisfied that the party in interest requirement is met. "While the term 'party in interest' is not defined by the Bankruptcy Code, the Second Circuit has stated that in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party must be either a creditor or a debtor." *In re Everton Aloysius Sterling*, 543 B.R. 385, 390 (Bankr. S.D.N.Y. 2015). "Section 101(10) of the Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.'" *Id.* (quoting 11 U.S.C. § 101(10)(A)). "Claim" is defined as a:

>   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

7

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §§ 101(5)(A), (B). "The Supreme Court has said that 'claim' has the broadest available definition, and has held that the plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." *In re Johns-Manville Corp.*, 552 B.R. 221, 231 (Bankr. S.D.N.Y. 2016), *aff'd,* 623 B.R. 242 (S.D.N.Y. 2020), *aff'd,* No. 20-3693-BK, 2022 WL 4487889 (2d Cir. Sept. 28, 2022).

Here, the record establishes that Debtor did not comply with the court-ordered Settlement giving him 180 days to refinance or pay off the mortgages on the Property, (*see* Bankr. Dkt. No. 14-2 ¶¶ 15, 16; Bankr. Dkt. No. 14-6; ECF No. 7 at 14:15-18), and thus Eastman held an equitable remedy for that breach: the right to act as receiver of the Property to carry out its sale. (Bankr. Dkt. No. 14-2 ¶¶ 15, 16; Bankr. Dkt. No. 14-6). This is "an enforceable obligation," *In re Johns-Manville Corp.*, 552 B.R. at 231, sufficient to constitute a "claim" under the Bankruptcy Code. Thus, Eastman is a party in interest.

### B. Section 362(d)(1)

"In reviewing a bankruptcy court's grant of relief from an automatic stay under section 362(d)(1), the district court considers whether cause exists." *Boissard v. Specialized Loan Servicing, LLC*, No. 19-CV-4280, 2020 WL 9816005, at *4 (E.D.N.Y. Nov. 24, 2020). "The term 'for cause' is a broad and flexible concept that must be determined on a case-by-case basis." *Id.* "Although 'cause' is not explicitly defined in the statute, section 362(d)(1) provides that 'lack of adequate protection of an interest in property of such party in interest' is grounds for finding cause." *Id.* (quoting 11 U.S.C. § 362(d)(1)).

When requesting relief from the automatic stay for cause, "[t]he movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protections of the automatic stay." *In re Great Atl. & Pac. Tea Co.*, 467 B.R. 44, 55 (S.D.N.Y. 2012), *aff'd sub nom. Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co.*, 508 F. App'x 63 (2d Cir. 2013). "In addition, to determine whether cause exists to permit litigation against the debtor to continue in another court, the Court considers the non-exclusive list of factors . . . set forth by the Second Circuit in *In re Sonnax Industries, Inc.*" *Boissard*, 2020 WL 9816005, at *4.[4] "A reviewing court has wide discretion to apply the *Sonnax* factors as it sees fit based on the facts underlying a given motion." *Id.* at *5; *see In re Bogdanovich*, 292 F.3d at 110 ("Not every one of [the *Sonnax*] factors will be relevant in every case. The ultimate determination whether to lift a stay depends upon the facts underlying a given motion.").

Here, Judge Morris correctly concluded that the relevant *Sonnax* factors weighed in Eastman's favor. On the record before her, it was plain that allowing Eastman to proceed in the State Court would enable resolution of issues related to the Property and would not interfere with the bankruptcy case;[5] that state courts have the expertise to address the domestic relations issues

---

[4] The factors include "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

[5] Any surplus from the sale was to be held in escrow pending further order of the Bankruptcy Court. (*See* ECF No. 7 at 17:20-25; January 19 Order.)

9

involved in the State Court proceedings; that allowing the State Court action to proceed would serve the interests of judicial economy by enabling the State Court to resolve issues which had been before it for a decade and were properly litigated in state court; and that the balance of harms favored Eastman, given Debtor's failure to comply with several court orders over many years. *See In re Singe*, No. 23-60376-6, 2023 WL 7211300, at *2 (Bankr. N.D.N.Y. Nov. 1, 2023); *In re Taub*, 438 B.R. 39, 44-50 (Bankr. E.D.N.Y. 2010); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 108-12 (Bankr. S.D.N.Y. 2010); *In re Cole*, 202 B.R. 356, 360-62 (Bankr. S.D.N.Y. 1996). To the extent Debtor now argues that "the benefit of hindsight" shows that the Bankruptcy Court erred in lifting the automatic stay, (Debtor's Br. at 13), that is not a proper consideration for this Court on appeal. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 598 B.R. 102, 111 (S.D.N.Y. 2019) ("In reviewing a decision of a bankruptcy court, the district court . . . may not consider evidence outside the record."), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 818 F. App'x 48 (2d Cir. 2020).[6] Accordingly, the Bankruptcy Court did not abuse its discretion in granting Eastman's motion to lift the automatic stay pursuant to § 362(d)(1).[7]

---

[6] To the extent Debtor argues that Judge Morris should not have lifted the stay because Eastman had filed a contempt motion in the State Court the day after Debtor filed for bankruptcy, that argument was not raised below, and Debtor has pointed to no evidence in the record before me that supports it. In any event, the authority Debtor cites, (*see* Debtor's Br. at 14), stands for the proposition that the automatic stay should not be annulled to give effect to actions taken in violation of the stay, *see In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995), *as amended* (Nov. 28, 1995), but that is not what happened here. The January 19 Order did not annul the automatic stay to retroactively allow the contempt motion; it lifted the automatic stay to allow Eastman to pursue her rights going forward.

[7] Debtor's brief raises additional irrelevant and unsubstantiated arguments. The Court has reviewed all of Debtor's arguments, and to the extent that this opinion does not explicitly address them, the Court has deemed them to be meritless. *See In re Sterling*, No. 14-BK-12608, 2018 WL 313085, at *6 & n.8 (Bankr. S.D.N.Y. Jan. 5, 2018); *see also Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 509 n.10 (E.D.N.Y. 2018) (considering additional theories raised by

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's January 19, 2024 Order is affirmed.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: January 17, 2025
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

appellant and finding them insufficient to alter Court's conclusion with respect to main issue of standing).

11